## COLTON et al. v. ROSSI et al.

A municipal corporation can not take private property for public use, without making compensation in advance or providing a fund out of which compensation shall be made as soon as the amount to be paid can be determined.

And if failure be made in paying or providing such compensation, the party may retake possession of his property.

A town whose act of incorporation has been decided to be unconstitutional by the Supreme Court, has no legal existence as a corporation, and a judgment against it would be a mere nullity.

APPEAL from the District Court of the Eighth Judicial District, County of Siskiyou.

A statement of the facts appears in the opinion of the Court.

*Robinson & Beatty* for Appellants.

*Latham & Sunderland*, on the part of Appellants, made the following argument:

1. Upon the admission of California into the Union, formed from territory of the United States, acquired by the treaty of

Guadalupe Hidalgo, the right of eminent domain passed to the State, and nothing remained in the United States but the public lands. Pollard *v.* Hagan, 3 How. U. S., 212.

2. Respondents insist that their private property cannot be taken for public use without an actual payment in cash to them of its value. Appellants say, on the contrary, that the corporated authorities had a right to so dedicate their property to public use by making provision for their payment, and an actual payment was not necessary.

A payment to respondents of $270, and auditing their assessed damages, their acceptance of that sum and allowance of auditing their damages was a waiver of their rights in the premises.

Appellants contend that "private property may be taken for public use if provision is made for the assessment and payment of damages, though payment be not made." Mercer *v.* McWilliams Wright, 1 Ohio, 132; Rubottom *v.* McClure, 4 Blackf., 505; Pittsburgh *v.* Scott, 1 Penn. State, 309; Jackson *v.* Winn, 4 Litt. Ky., 323; Bates *v.* Copper, 5 Hammond, Ohio, 115; Young *v.* Buckingham, 5 Hammond, Ohio, 485; Willyard *v.* Hamilton, (part 2) 7 Hammond, Ohio, 112.

But respondents say that under the ruling of your Honorable Court, in case of The People ex rel. the Attorney-General *v.* The Town of Nevada, 6 Cal. Rep., 143, that the Town of Yreka could not be incorporated under the provisions of the act of 27th of March, 1850, the same being unconstitutional.

Are not the acts of such trustees valid *de facto* if not *de jure ?*

Appellants say that the dedication of the property of respondents for public uses was a ministerial act, and as such is valid and binding. It is valid as the act of a corporation acting *de facto,* if not *de jure.*

Kent, in his Commentaries, vol. 2, page 339, says : " In the case of public officers, who are such *de facto* under color of office by an election or appointment not strictly legal, or without having qualified themselves by the requisite tests, or by holding over after the period prescribed for a new appointment, as in the case of sheriffs, constables, etc., their acts are held valid as respects the rights of third persons who have an interest in them, and as concerns the public, in order to prevent a failure of justice."

This doctrine has been repeatedly adjudged, and it is now a well-settled principle of law that "the acts of officers *de facto,* are as effective as far as the rights of third persons or the public are concerned, as if they were officers *de jure."* Burke *v.* Elliot, 4 Iredell, 355; Gilliam *v.* Reddick, 4 Iredell, 368; Schlencher *v.* Pixley, 3 Scam., 483; People *v.* Collins, 7 Johns., 549; McInstry *v.* Tanner, 9 Johns., 135.

*P. L. Edwards* for Respondents.

The respondents could not be divested of any of their rights

by means of the acts of the trustees or of their commissioners for the reasons:

1. That if the law under which they are alleged to have been incorporated was that of the 11th of March, 1850, then no such officers as trustees are recognized, but it provides expressly that "for the government of every city incorporated under this act there shall be a mayor, recorder, and common council to assist, etc." The provision is for councilmen and not for trustees. Compiled Laws, 102, § 7.

2. If the incorporation was sought under the act of the 27th of March, 1850, then under the act they had no power to do the acts in question. Compiled Laws, 115, § 6.

3. Had these trustees been duly incorporated under a constitutional law, they could only have appropriated the private property of the respondents to the public use according to the directions and requirements of such law. They could not themselves appoint the appraisers of the property which they had determined to take, for this would be to a great extent the trying of their own case; but they should have applied to the County Court, which could, under the terms of the law, make the appointments. Compiled Laws, 104, §§ 14–18.

So that even according to the statute, the whole proceeding was extra official and void.

4. The act itself, as already determined by this Court, is wholly unconstitutional. The power to create such a corporation is legislative, and can not be conferred upon the County Court. The People *v.* Nevada, 6 Cal. R., 143.

There was no divestiture of the respondents' title. The proceedings had all been irregular, and there had been no acceptance of the proffered compensation.

If the proceedings had been merely voidable, instead of absolutely void, there was no act, on the part of the respondents, to satisfy them. Within two months after the appropriation of the land by the trustees, the respondents brought an action, in the nature of trespass, against them, in which they recovered damages and costs for about thirteen hundred dollars, of which only about two hundred and seventy dollars were ever paid. Instead of receiving compensation for their land, the respondents have been denied all but a small part of the damages thus actually adjudged to them.

If the damages in that action were excessive, or if at the trial there occurred any error, there was a remedy by direct appeal, and by that only. If that action was against a supposed corporation, which in fact has no existence, as is in fact most manifest, then the whole, judgment and all, was an entire nullity, and can have no effect whatsoever upon this, or any other proceeding.

There was no corporation either to give compensation or to take the land—and all is null and void. The compensation must

have been made upon a proceeding in the regular course of law, before the appropriation to the use of the public. Com. Laws, 105, §§ 17–18; San Francisco v. Scott, 4 Cal. R., 114; McCann v. Sierra County, 7 Cal. R., 121. And the compensation must be in money; any other equivalent will be insufficient. Commonwealth v. Peters, 2 Mass. R., 125.

There is no pretence of any grant from the respondents; and if there had been one, in all respects regular in form and manner of execution, still there was none to take; for it was no corporation. The last hope of a reversal of this judgment, then, rests in the assumption that there was a dedication by the respondents to public uses—and if such dedication is sustained, it must be by the express fact set forth in the case that the appropriation and use of the land by the public was without the consent of the respondents. There can be no dedication presumed against the express dissent of the owner of the land. Chancellor Kent, after a review of the cases, concluded thus: "The true principle to be deduced from the authorities, I apprehend to be, that if there be no other evidence of the grant or dedication than the presumption arising from the fact of acquiescence on the part of the owner, in the free use and enjoyment of the way as a public road, the period of twenty years, applicable to incorporeal rights, would be required, as being the usual period of limitation. But if there were clear, unequivocal, and decisive acts of the owner, amounting to an explicit manifestation of his will to make a permanent abandonment and dedication of the land, those acts would be sufficient to establish the dedication within any intermediate period, and without any deed or other writing." 3 Kent's Comm., 451. There can here be presumption of a grant, or dedication from the lapse of time or continuous user.

The remaining question, then, is: are there any acts of the respondents evidencing a clear, unequivocal, decisive and explicit intention of permanent abandonment and dedication of the land? A negative answer is enforced by every fact in the case. The respondents almost immediately sued for the trespass—and the statement, as before mentioned, shows that the appropriation and user was against their consent. There can be no room for a presumption of consent where there is affirmatively shown to have been an express dissent. In Massachusetts it has been held that "A town may acquire a right of way by grant; and exclusive, uninterrupted user by the inhabitants for twenty years, unexplained, is evidence of a grant, but such way will be a private way, and a nuisance on it will not be indictable. A public townway can be established only in the mode prescribed by statute; and a record of the establishment of such a way can not be presumed from any user or length of time." Commonwealth v. Low, 3 Pick. R., 402.

In that State, the Courts were long reluctant to recognize the

doctrine of a dedication of a right of way in any manner.   Hinkley v. Hastings, 2 Pick. R., 162.

Although the English cases are more favorable to the presumption of such dedications than those of Massachusetts, yet they are more than abundantly sufficient to exclude such a presumption here.   Moody v. Hayden, 1 Eng. Com. L. R., 74; The King v. The Inhabitants of St. Benedict, 6 do., 158; Wood v. Veal, 7 do., 158.

The principal authorities, English and American, are collected and reviewed in 2 Smith's Leading Cases, 176, 180.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The town of Yreka was incorporated on the fifth of May, 1854, under the act of the Legislature of March 27, 1850.   On the fourteenth of June, 1854, the board of trustees passed an ordinance for the opening of a street through the premises of defendants. The board appointed appraisers, who estimated the value at $750.   This sum was tendered to defendants, but the same was refused.   The defendants afterwards brought suit against the corporation to recover the damages occasioned by the appropriation of their property, in which they obtained judgment for $1050.   An order was drawn upon the treasury of the town for the whole amount, including the costs; and the sum of $270 was paid, and endorsed upon the order as a payment.   The remainder not having been paid, the defendants took possession of the street.   This suit was brought by the plaintiffs, who owned property upon the street, to restrain defendants from erecting buildings, which would close up the street and obstruct the approach to plaintiffs' house of business.   Upon this state of the case, the Court below decided that the plaintiffs were not entitled to any relief, and the plaintiffs appealed.

In the case of McCann v. The County of Sierra, (7 Cal. R., 121,) we held "that compensation must be made in advance, or a fund must be provided, out of which compensation must be made so soon as the amount can be determined.   The property of the citizen can not be taken from him without ample means of remuneration are provided."

The compensation in this case was not made in advance, and there was no fund provided out of which the same could be paid when the amount was determined.   The town was incorporated under an act decided by this Court to be unconstitutional; and the incorporation was void.   (The People v. The Town of Nevada, 6 Cal. R., 143.)   The defendants had no power to obtain payment, as their judgment against a supposed corporation, having no legal existence, was a mere nullity.   The fund supposed to be provided, had no legal existence, as the authority creating it

had none.  The only thing the defendants could do was to take possession of the property.

Judgment affirmed.