JOHN STEPHANI ET AL.

v.

THE CATHOLIC BISHOP OF CHICAGO.

1. LEASE—AGREEMENT TO PAY ASSESSMENTS.—A condition in a lease that the lessee shall "pay all *assessments* whatsoever levied," etc., on said premises, does not bind him to the payment of State, county and city taxes for general purposes.

2. "ASSESSMENT" DOES NOT INCLUDE GENERAL TAXES.—The word assessment is often used to signify a proceeding which includes taxes, but in the above connection it was used as a proper, specific designation of the charges upon the property, and in that sense it does not include taxes for general purposes.

3. MEANING ESTABLISHED BY USAGE.—The popular understanding of the use of the word assessment refers it specifically to those charges imposed upon real property by the city to defray the expense of local improvements, in proportion to the benefits received, and this distinction between assessments and taxes is observed in the enactments of the legislature. The contract in this case is to be construed in the light of the legislation and usage of this State, and these having affixed a definite meaning to the term, the parties are conclusively presumed to have so employed it.

ERROR to the Circuit Court of Cook county; the Hon. W. K. McALLISTER, Judge, presiding.

Mr. A. W. GREEN, for plaintiffs in error; upon the rule of construction of contracts, cited Chitty on Contracts, 104; French v. Brewer, 3 Wall. Jr. 346; Hawes v. Smith, 12 Me. 429; 2 Kent's Com. 557; Potter v. O. & L. Mut. Ins. Co. 5 Hill, 147; Wells v. Carpenter, 65 Ill. 447; Story on Contracts, § 805; Reynolds v. Hall, 1 Scam. 35; Jesson v. Wright, 2 Bligh, 1; Winter v. Perrott, 6 M. & G. 357; Ellmaker v. Ellmaker, 4 Watts, 89; Canal Trustees v. City of Chicago, 12 Ill. 403.

Where only one meaning can be attached to the terms used in a contract, that meaning must be enforced, and extrinsic evidence is not admissible to vary its terms; but where the words are ambiguous, parol evidence may be admitted to show the sense in which the parties used them: Stoops v. Smith, 100 Mass. 63; Mechanics' Bank v. Bank of Columbia, 5

Wheat. 326; Peisch v. Dixon, 1 Mason, 9; Doyle v. Teas, 4 Scam. 202; Goldshede v. Swan, 1 Exch. 154; Colburn v. Dawson, 70 E. C. L. 760.

The acts of the parties may be resorted to as a means of interpretation: St. L. Gas Light Co. v. City of St. Louis, 46 Mo. 121; Knight v. N. E. Worsted Co. 2 Cush. 271; Reading v. Gray, 37 N. Y. 78; Cavazos v. Trevino, 6 Wall. 773; Farrar v. Rowley, 2 La. An. 475; Citizens F. Ins. Co. v. Doll, 35 Md. 89; Chicago v. Sheldon, 9 Wall. 50; Chapman v. Bluck, 33 E. C. L. 662; Parmalee v. Hambleton, 24 Ill. 605; Leavers v. Cleary, 75 Ill. 349; W. U. R. R. Co. v. Smith, 75 Ill. 496.

Where a word used in a contract is susceptible of two meanings, statements of the parties during the negotiation are admissible to ascertain in what sense the parties themselves used them: Hart v. Hamnett, 18 Vt. 127; Barnett v. Allen, 10 Ohio, 426; Cole v. Wendell, 8 Johns. 116; Gray v. Harper, 1 Story, 574; Sargent v. Adams, 3 Gray, 72; Stoops v. Smith, 100 Mass. 66; Birch v. DePeyster, 4 Camp. 385; Mumford v. Getling, 97 E. C. L. 303; Webster v. Enfield, 5 Gilm. 298; Barrett v. Stow, 15 Ill. 423.

Evidence of the sense in which the words are generally used by persons in the same business, is admissible for the same purpose: The Schooner Reeside, 2 Sumn. 567; Cohtan v. Retberg, 3 Esp. 121.

Generally, as to the meaning and use of the words assessment and taxes: Constitution 1848, Art. IX; Rev. Law 1845, Scates' Comp. 987, 1006; Private Laws 1851, 132; Private Laws 1857, 892; Hill v. Figley, 23 Ill. 418; City of Peoria v. Kidder, 26 Ill. 352; Hines v. City of Leavenworth, 3 Kan. 186.

Mr. T. A. MORAN, for defendant in error; that the construction of the contract is not open to evidence, cited 2 Parsons on Contracts, 551.

That the word assessment is used in the sense of tax, and so understood: Scates' Comp. 1080; Rev. Stat. 1874, 899; Hill v. Figley, 23 Ill. 418; State of Illinois v. Ill. Cent. R. R. Co. 27 Ill. 64; Burrill's Law Dic. Title "Assessment;" Webster's Dic; Mayor of Baltimore v. Greenmount Cemetery, 7 Md. 517;

People v. Brooklyn, 4 Const. 429; Rev. Stat. 1874, Chap. 113, §11; Curtis v. Pierce, 115 Mass. 187; Simonds v. Turner, 120 Mass. 328.

The words of a covenant must be taken most strongly against the covenantor: 2 Parsons on Contracts, 508; 1 Chitty on Contracts, 136; Beckwith v. Howard, 6 R. I. 1; Biddle v. Van Deventer, 26 Mo. 503; Browning v. Wright, 2 Bos. &. Pul. 22; Massie v. Belford, 68 Ill. 290; Walker v. Kimball, 22 Ill. 537; McCarty v. Howell, 24 Ill. 341.

Acts of the parties are not admissible to aid the interpretation of a contract: Clifford v. Walmesley, 5 T. Rep. 261; Boynham v. Guy's Hospital, 3 Ves. 298; Moore v. Foley, 6 Ves. 238; Iggulden v. May, 9 Ves. 333; Alderman v. Neate, 4 Mees. & Wels. 704; Doe v. Powell, 8 Scott's N. R. 687; Hepburn v. Snyder et al. 3 Pa. St. 72; Fry v. Hawley, 4 Fla. 281; Bellamy v. Bellamy's Adm'r, 6 Fla. 123; United Soc. v. Eagle Bank, 7 Conn. 469; Ogden et al. v. Kirby, 79 Ill. 555; Shore v. Wilson, 5 Scott's N. R. 958.

Where the language in a contract is ambiguous, courts will endeavor to ascertain the intention of the parties, but where it is unequivocal, although the parties may have failed to express their real intentions, there is no room for construction, and the legal effect of the agreement must be enforced: Benjamin v. McConnell, 5 Gilm. 536; Smith v. Brown, 5 Gilm. 309; Crabtree v. Hagenbaugh, 25 Ill. 233; Walker et al. v. Tucker et al. 70 Ill. 527; Canterbury v. Miller, 76 Ill. 355; Corbett v. Underwood, 83 Ill. 324; Mann v. Swyser et al. 76 Ill. 365; Hypes v. Griffin, 11 Chicago Legal News, 33; Marc v. Kupfer, 34 Ill. 286; Osgood v. McConnell, 37 Ill. 75; Bissell v. Ryan, 23 Ill. 566; Packard v. Van Schoick, 58 Ill. 79.

PLEASANTS, J.   In each of two leases of several lots in the city of Chicago, bearing date respectively July 1, 1858, and January 1, 1859, between the defendant in error of the first part and the plaintiffs in error of the second part, was contained the following covenant: "And the said party of the second part, their heirs, executors, administrators, and assigns, agree further to pay (additional to the rents above specified),

all water rents and all assessments whatsoever levied thereon or charged on said premises for and during the time for which the lease is granted;" and the single question presented by this record is whether the "assessments" so mentioned included State, county and city taxes for general purposes.

Whatever other meanings may be attached to the term in various connections the parties here have assumed in their agreement that at the time of the execution of these leases it was the proper designation of some or all kinds of public charges upon real estate in the city of Chicago, and employed it accordingly. The plaintiffs in error claim that it applied only to such as were imposed to meet the cost of local and compensating improvements, since more commonly known as special assessments, while the defendant in error insists that it included as well the general taxes above mentioned.

It is to be observed that in this inquiry there is nothing in the context to guide us. From the use of the term alone, as otherwise shown, or as the subject of common knowledge or of judicial notice, we are to arrive at the meaning which of its own unaided force it then conveyed.

In support of the claim for the broader signification the following are adduced as instances of such use:

Section 2 of chapter V. of the city charter of 1851 confers power to levy and collect "taxes" on real and personal estate, when required, among other purposes, "for the erection of a city hall or bridewell; *Provided*, the estimated cost . . . may be apportioned by the common council, and collected by a series of annual *assessments*." Manifestly the term was not here used to signify the taxes, but the proceedings for raising them. The antecedent clause authorized the apportionment of the cost into installments, and this provided for its collection—not *in* such installments, for that was already implied, but "*by* (means of) a series of annual" *proceedings* here called "assessments." Laws of Illinois, 2d Session of '49 and '51, p. 149.

Section 6, of the same chapter, provides that, if at the close of any municipal year it shall be found that there has been expended in any division of the city, for strictly local purposes, more than its relative proportion, "it shall be the duty of the

common council, the ensuing year, to increase the *general taxes* in such division by the amount of such excess," and at the same time "to abate such excess from the assessment in the other divisions." In this instance—used in the singular number—it would seem to indicate a statement or representation in some form, of the amount of the taxes in the divisions referred to. But whatever is meant, since it was something that was to be abated, or abated from, before any taxes were to be collected, it could not have been those taxes.

Section 49, of the General Revenue Act of 1845, declares that "the *assessment* shall be a lien on the personal property of all persons owing taxes from and after the time the assessment books are received by the collector for the State and county taxes due thereon, and no sale," etc. Scates' Statutes, p. 1,080. A lien is a tie that binds property to a debt or claim for its satisfaction. It is always either a statute, a writ, a record, an instrument or a proceeding, and so necessarily distinct from the debt. The assessment, here declared to be a lien for the tax, for that reason cannot be the tax. It is the proceeding by which the tax is imposed; and so the Supreme Court appear to consider it, although that question was only incidentally referred to, in Hill v. Figley, 23 Ill. 420.

Section 254 of the Revenue Act of 1874 also, declares that "the *taxes* assessed upon personal property shall be a lien upon the personal property of the person assessed, from and after the time the tax book is received by the collector." R. S. 1874, p. 899. This provision is substantially the same as the one last above quoted; and it is argued that the substitution in this of the word "taxes" for the word "assessment" in that, shows that they bear the same sense. But it will be noticed that it is not the "taxes" which are here declared to be a lien upon the property, but the "taxes *assessed*," etc., and these are the terms substituted for "assessment." A tax assessed is a sum found and declared to be due for a public purpose by some prescribed proceeding, and it is this proceeding which is here intended as what constitutes or creates the lien; just as when we say, somewhat loosely, that a mortgage debt or a judgment debt is a lien, we mean, and are understood to mean, that the

mortgage or judgment constitutes or creates the lien for the debt. That the proceeding, and not the money debt, is here referred to, further appears from the application of the same term—"assessed"—to the person in the same manner as to the property.

Lastly, the language of Mr. Justice Breese, in The State of Illinois v. The Ill. Cent. R. R. Co. 27 Ill. 64, is cited as illustrating and sanctioning the use of the term in the broad sense here claimed. Having stated that upon the list of the stock, property and assets of the company mentioned, "the auditor assessed a tax," etc., he adds: "and for the non-payment of this assessment the suit is brought." The auditor assessed the tax—took some proceeding to impose it and to manifest the fact and the amount. This proceeding, then, was distinct from the amount, and the expression relied on—"non-payment of this assessment"—is clearly elliptical for "non-payment of the debt or amount ascertained by this assessment." Doubtless numerous instances might be found in which very scholarly judges have written of the non-payment of a judgment or of a note, and yet it would scarcely be contended that they regarded the record or note as meaning the money mentioned in them.

The foregoing are all the instances that have been adduced to show a meaning of the term assessments, as used in this State, which would include general taxes. The majority of them occurred since the execution of the leases in question, but to our apprehension neither of them shows it. It is often used to signify a *proceeding* which does include them; but here it was used as a proper, specific designation of the charges upon the property, and in that sense we are not advised of any usage or authority which even recognizes it. Nor does the addition of the term "whatsoever" operate to extend the meaning, for they must still be "assessments."

On the other hand, examples showing that in its use as such designation it signified specifically and exclusively those charges imposed upon real estate by authority of the city to defray the expense of local improvements in proportion to the benefits received, are so numerous, clear and well known as scarcely to require a reference to them. See the Charter of

1837, Laws of 1836–7, p. 541; the Charter of 1851, Chapters VI. VII. VIII; the Amendatory Acts of 1854, Laws of 1854, p. 218 § 8; and of 1857, Private Laws of 1857, p. 902, § 42; and for the provisions of the General Statutes, Scates' Statutes, pp. 202, 1006.

Throughout these enactments the distinction between the designations, taxes and assessments, and the things thereby respectively designated is uniformly observed. It seems also to have been recognized by the Supreme Court in The Canal Trustees v. The City of Chicago, 12 Ill. 403, and the numerous cases arising on proceedings for assessments must have made it quite familiar in this community

In this state of facts it would be unprofitable to inquire for the popular meaning of the term in question, as stated by lexicographers, or for its signification as used in the statutes or judicial decisions of other States; for we suppose that this contract is to be construed in the light of the legislation and usage of this State; and if they affix a definite meaning to it, the parties are conclusively presumed to have so employed it. We are constrained to conclude that they do, and that the meaning so affixed does not include general taxes.

The Circuit Court instructed the jury otherwise, and they found a verdict for the defendant in error for the amount of such taxes paid during the series of years from the execution of the leases to the institution of this suit, which the Court refused to set aside.

For these errors the judgment of the Circuit Court is reversed and the cause remanded.

Reversed and remanded.