# MOUNTRAIL COUNTY, a Municipal Corporation, v. GEORGE W. WILSON and Clara J. Wilson, His Wife, T. S. Slingerland, et al.

(146 N. W. 531.)

During the election to determine the location of the permanent county seat of Mountrail county, George W. Wilson offered the county and its electors that he would donate to the county, if Stanley should be chosen as such county seat, half a block of land for courthouse purposes. Upon Stanley being chosen he deeded to the county a half block of land, reciting in the deed that the same was "to be used for courthouse and other necessary county buildings, and that only," for which conveyance a formal consideration of $1 was paid by the county. At that time a building used as a county jail was situated on that tract, and is still thereon and used for jail purposes. In 1912 the voters authorized bonding for $50,000 for courthouse purposes, and bonds to that amount have been sold, and a contract entered into for the erection of a county courthouse. Last September the county commissioners determined by resolution that half a block was inadequate in area as a site, and entered into a contract with B. W. Taylor, of Stanley, wherein he agreed to convey to the county a one-half block tract as a gift, and furnish the means to procure by condemnation proceedings an additional one-half block adjacent thereto, the county to thus acquire a full block of land, free of cost, to be used as a courthouse site. Under this arrangement Taylor donated a one-half block, deeding the same to the county, it accepting title, and also delivered the county his certified check to be used in payment of the costs of this action and the value of the property sought to be obtained by this action in condemnation. The county commissioners then designated the Taylor tract as the courthouse site and entered into a contract for the erection thereon of the courthouse. The land adjacent thereto and sought to be obtained by these condemnation proceedings belongs to Wilson, the donor of the first courthouse site adjudged inadequate by the commissioners. Wilson defends, contending: (1) That the county was without power to procure the Taylor tract and that the county's title to the same is void. (2) That the acceptance of the Wilson tract, under the clause contained in the deed, precluded and estopped the county from erecting a courthouse at any other place than upon the Wilson site. (3) That by using the Wilson site for jail purposes the county had accepted same, and it had become a courthouse site. (4) That by failing to submit with the bonding proposition the question of the purchase of a site, the county was without power to acquire another site. (5) That the county commissioners are powerless to change from one established courthouse site to another until the voters of the county, by a majority vote, shall have first authorized a sale of the first site. (6) That the selection by the board of one

site exhausts the power of the board to change therefrom by the selection of a new site. *Held:*

**County — may acquire by gift — sites for county buildings —title — acceptance — purpose.**

1. The county may acquire by gift any number of grounds as sites for county buildings, whether used for such purposes or not; and the acceptance of title to one site did not bar it from accepting title to another site donated the county, even though both were inadequate for the purpose.

**County — sites — donated.**

2. The county has not purchased any site, but possesses two inadequate sites, both donated.

**Condemnation proceedings — may acquire sites — vote of people — note necessary.**

3. Section 2406, Rev. Codes 1905, empowers the county to acquire by condemnation proceedings additional ground adjacent to an inadequate site to constitute an adequate and suitable site for county buildings, and this without authorization by a vote of the electorate of the county.

**Tract — donation — proper site — county — estoppel — right of choice — in county.**

4. The tract donated by Wilson has never been adjudged to be an adequate, proper, or suitable site for courthouse purposes, and no conditions contained in a deed donating real property for public purposes can preclude or estop the county or the public, acting by its legally constituted authority, from the free right of choice of a site for public buildings. An individual cannot contract with the county and thereby compel it to use land granted for a county courthouse site, because a private citizen cannot acquire a private interest as against the public in the matter of the location of public buildings. He can have no more right in the selection of a site than any other citizen, and can acquire no right not possessed by every other citizen, and, therefore, can have nothing upon which to urge an estoppel against the county or the public. Nothing contained in the deed prevented the free exercise of the right of choice and the selection of different sites than the one donated by Wilson.

**Site legally chosen — county board — change of location — question not here involved.**

5. The Wilson site never having been legally chosen and designated as a courthouse site by the board, upon whom the duty of selecting a site devolved by law, no question of change of location from one established site to another is involved. The question of the right of the board, without authorization by a majority vote of the electors of the county, to change from an established courthouse site to another as the site upon which a new courthouse is to be erected, is not before us, and is not determined.

**Sale of county lands not involved — sites for county buildings.**

6. There being no question of sale of county lands involved, the provisions of § 2399, Rev. Codes 1905, authorizing the purchase of new county grounds in lieu of those already had, and provided that the old tract should not be sold until authorization is first obtained by a majority vote of the people of the county, has no application to the case at bar. The Taylor site is not acquired in lieu of the Wilson site, and the provisions of this section do not prohibit the acquirement by gift of many grounds from which the commissioners may choose one adequate site.

**County board — authority — title to sites — action in condemnation — jury — verdict.**

7. All contentions of the respondent Wilson that the board has acted without authority of law in procuring the Taylor site are adjudged not well taken, and title is quieted in the county to the Taylor tract; and as to the additional half block belonging to Wilson, adjacent to the Taylor site, and the subject-matter of this action in condemnation, title thereto will be vested in the county upon the county paying into the court for defendant George W. Wilson the value thereof, determined by the verdict of the jury to be $200, together with Wilson's costs and disbursements of this action on trial and on appeal.

**Public use — taking of land for — necessity — established.**

8. The necessity of the taking of the land in question for such public use is established. The necessity for the exercise of the power of taking was for the board, and is not for the courts to determine.

**Judgment — dismissal — state Constitution — full compensation — costs — recovery — appeal.**

9. Defendant Wilson, in the lower court, recovered a judgment of dismissal, and the county appeals therefrom and prevails. *Held* that under § 14 of the state Constitution, requiring full compensation to be first paid the owner before the taking of private property for public use by condemntaion, the costs of this appeal, as well as the costs of trial below, are but a necessary part of the ascertainment of the amount of damages to be paid for the property taken. Hence respondent Wilson will recover of the county his actual necessary costs and disbursements allowed in that behalf by law, both on trial and on this appeal, notwithstanding the county prevails on this appeal, a different rule from ordinary cases here applying under § 14 of our state Constitution. To assess costs against Wilson would be a deduction from the full compensation to "be first made in money" as "ascertained by a jury" within such constitutional provision.

**Judgment — decree — county — payment — amount — costs.**

10. Judgment ordered vacated on the findings of the trial court confirmed, and judgment and decree in conformity herewith in favor of the county as to its right to take the property in question upon the payment of $200, interest,

costs, and disbursements to respondent George W. Wilson is directed to be entered.

Opinion filed March 7, 1914.

Appeal from the District Court of Mountrail County, *Frank Fisk,* J.

Reversed.

*F. F. Wyckoff,* State's Attorney, and *Henry J. Linde,* for appellant.

By virtue of the deed from Wilson, Mountrail County acquired title to and possession and control of the property therein described. The estate conveyed was not one on *condition.* 2 Washb. Real Prop. p. 3, § 2; Garfield Twp. v. Herman, 66 Kan. 256, 71 Pac. 517; Curtis v. Board of Education, 43 Kan. 138, 23 Pac. 98.

A deed absolute, but specifying the purpose for which the property conveyed shall be used, *does not* create an estate upon *condition subsequent.* Soukup v. Topka, 54 Minn. 66, 55 N. W. 824; Faith v. Bowles, 86 Md. 13, 63 Am. St. Rep. 489, 37 Atl. 711; Farnham v. Thompson, 34 Minn. 330, 57 Am. Rep. 59, 26 N. W. 9; Wier v. Simmons, 55 Wis. 637, 13 N. W. 873; Portland v. Terwilliger, 16 Or. 465, 19 Pac. 90; Ecroyd v. Coggeshall, 21 R. I. 1, 79 Am. St. Rep. 741, 41 Atl. 260; Kilpatrick v. Baltimore, 81 Md. 179, 27 L.R.A. 643, 48 Am. St. Rep. 509, 31 Atl. 805; Huron v. Wilcox, 17 S. D. 625, 106 Am. St. Rep. 788, 98 N. W. 88; Greene v. O'Connor, 18 R. I. 56, 19 L.R.A. 262, 25 Atl. 692; Downen v. Rayburn, 214 Ill. 342, 73 N. E. 364, 3 Ann. Cas. 36; Warren County v. Patterson, 56 Ill. 111.

Since the Wilson tract was deeded to the county for public purposes, it is contended that the county has no power to sell or dispose of such land. Such is not the law. Rev. Codes 1905, § 2377; Colburn v. El Paso County, 15 Colo. App. 90, 61 Pac. 241; Kendall v. Frey, 74 Wis. 26, 17 Am. St. Rep. 118, 42 N. W. 466.

How and where a public building shall be erected is necessarily a question of public policy. Courts cannot wisely review the action of the public authorities on such subject. Judd v. Fox Lake, 28 Wis. 587; Crow v. Warren County, 118 Ind. 51, 20 N. E. 642; Way v. Fox, 109 Iowa, 340, 80 N. W. 405; Mahon v. Norton, 175 Pa. 279, 34 Atl. 660; Bennett v. Norton, 7 Kulp, 443; State ex rel. Norman v. Smith, 46 Mo. 60; Simpson v. Bailey, 3 Or. 515; 11 Cyc. 380; Lawrence

County v. Hall, 70 Ind. 469; 1 Dill. Mun. Corp. 3d ed. 38; Kokomo v. Mahan, 100 Ind. 242; Bosley v. Ackelmire, 39 Ind. 536; Platter,v. Elkhart County, 103 Ind. 360, 2 N. E. 544.

*Greenleaf, Bradford, & Nash,* for respondents.

The county accepted the lands as and for a courthouse site, and such was the intention of all parties. Stafford County v. State, 40 Kan. 21, 18 Pac. 889.

In the absence of statutory authority, a board of county commissioners cannot review or reverse acts of a prior board, performed within the scope of their authority. Stenberg v. State, 48 Neb. 299, 67 N. W. 190; Rev. Codes 1905, §§ 2377, 2399.

Repeals by implication are, in any event, not favored. State ex rel. State Farmers' Mut. Hail Ins. Co. v. Cooper, 18 N. D. 583, 120 N. W. 878.

The question of a site for courthouse and county buildings should be submitted to the voters. Rev. Codes 1905, § 2399; Waring v. Cheraw & D. R. Co. 16 S. C. 416; Creighton v. Pringle, 3 S. C. 79.

The defendants, having been brought into court, are entitled to raise any question by way of defense; they have rights as taxpayers. 11 Cyc. 405; McCann v. Carlson, 26 N. D. 191, 144 N. W. 92.

Points here raised by appellant, not having been raised and presented in the trial court, cannot be considered. McLain v. Nurnberg, 16 N. D. 144, 112 N. W. 243; Van Gordon v. Goldamer, 16 N. D. 323, 113 N. W. 609; Poirier Mfg. Co. v. Kitts, 18 N. D. 556, 120 N. W. 558.

The judgment of the county board is final and conclusive on the question of the necessity or acquiring additional ground for the use of county buildings. Rev. Codes 1905, §§ 2406, 2566; Grafton v. St. Paul, M. & M. R. Co. 16 N. D. 313, 22 L.R.A.(N.S.) 1, 113 N. W. 598, 15 Ann. Cas. 10.

The county board may locate the county buildings on any one particular piece of ground obtained for such purpose, even though other tracts have been acquired. Rev. Codes 1905, § 2399; James v. Gettinger, 123 Iowa, 199, 98 N. W. 723; Vance v. District Twp. 23 Iowa, 408; Atkinson v. Hutchinson, 68 Iowa, 162, 26 N. W. 54; Carpenter v. Independent Dist. 95 Iowa, 300, 63 N. W. 708.

The official acts of a board of county commissioners cannot be at-

tacked in a collateral proceeding by a defendant, or in a direct action in his individual capacity, unless his beneficial interest therein, as a taxpayer or otherwise, is alleged and proved. Rev. Codes 1905, §§ 2423, 7810; Cleveland v. McCanna, 7 N. D. 457, 41 L.R.A. 852, 66 Am. St. Rep. 670, 75 N. W. 908; San Luis Obispo County v. Simas, 1 Cal. App. 175, 81 Pac. 974; Waugh v. Chauncey, 13 Cal. 11; Norris v. Farmers' & Teamsters' Co. 6 Cal. 599, 65 Am. Dec. 535; Fall v. Paine, 23 Cal. 302; Sherman v. Bellows, 24 Or. 553, 34 Pac. 549; Ruthstrom v. Peterson, 72 Kan. 679, 83 Pac. 825; Culpeper County v. Gorrell, 20 Gratt. 484; Bryant v. Logan, 56 W. Va. 141, 49 S. E. 21, 3 Ann. Cas. 1011; McCann v. Carlson, 26 N. D. 191, 144 N. W. 92.

Goss, J. This action is one for condemnation of land for public use. The complaint is in the usual form, alleging that the present and designated courthouse site is owned in fee simple by Mountrail county. That "it is necessary for plaintiff to acquire title to another tract of land, adjoining the land described on the west, in order to have sufficient ground for said courthouse and jail and such other necessary county buildings as may be constructed by the plaintiff in the future for the use of the county; that the land described in ¶ 3 (the established site) alone is insufficient for the needs of the plaintiff in the construction of said courthouse and jail and other buildings, and that in order to have such a site for the construction of such buildings as will meet with the present and future needs and requirements of the plaintiff, the plaintiff will require and does now require the acquisition of title to that certain tract of land described in ¶ 2." The tract sought to be appropriated is about one half of a block, described by metes and bounds, and belonging to defendant Wilson. Plaintiff seeks to have the necessity for the taking, together with the value of the property to be taken, determined. The defendants admit their ownership of the tract in question, and deny the ownership by the county of the site designated. Further defense is made that at the general election in 1912 there was submitted to the voters of the county the question of bonding in the sum of $50,000 for the purpose of constructing a courthouse for said county, which question carried and bonds so authorized were sold, but that said proposition so submitted did not include authorization for

the construction of a jail for said county, or the procuring of a site on which to build and construct a county courthouse and jail.

Defendants aver that prior to said election and for some years the county was and now is the owner in fee simple of a tract of land particularly described. "That the board of county commissioners of the plaintiff selected and procured the above-described land and premises to be used as a site upon which to build and construct a county courthouse and other necessary county buildings for the use of said county aforesaid." This tract is a different tract at said county seat than the one officially designated by the present board of county commissioners as the courthouse site and upon which the erection of a courthouse has been begun. . Defendants allege also that the resolution of the board of county commissioners, dated September 23, 1913, designating that the courthouse shall be built upon the newly acquired site and the contract and agreement for the purchase thereof, was then and is now fraudulent and void as were all acts and proceedings of the present county board in procuring and designating the present site upon which the courthouse is being built.

The proof offered was embodied by the court in its findings, from the judgment upon which the appeal is taken, with the facts thus admitted. The court found that the city of Stanley was selected by a majority vote of the people of the county at the November, 1910, election as the county seat, which vote was canvassed and the result declared November 22, 1910. That during that county-seat election defendant Wilson had offered to the county and its electors that if the city of Stanley was chosen as the permanent county seat that he would convey to the county a half block of land in said city. That a deed to said tract was prepared October 25, 1910, and delivery thereof to the county commissioners was made after the result of said election was generally known, and was placed of record November 10, 1910, the county paying as a formal consideration the sum of $1, paid by warrant duly audited and allowed, received and cashed by Wilson on November 11, 1910. Said deed was in the usual form of deed of warranty, conveying the land particularly described "to be used for courthouse and other necessary county buildings, and that only." No clause is contained in the deed that the lands on breach of condition should revert back to the grantor. So that at the 1910 general election the permanent county

seat was established at the city of Stanley and immediately the county became vested with title to a half block of land deeded to and received by it "to be used for courthouse and other necessary county buildings and that only." A county jail had been erected on this site in the summer of 1909, by the county commissioners, and prior to the acquisition of title by the county the following year. This building has been used as a county jail ever since and is still upon said tract.

That at the 1912 general election the question of bonding the county for $50,000, to procure funds with which to erect a county courthouse, was submitted and authorized by a majority vote of the electors, and pursuant thereto the bonds were sold and funds were secured with which to build the county court house. The county has recently entered into a contract for its erection upon a different site acquired by warranty deed executed October 16, 1913, in area about a half block and within said county seat, and which second and officially designated site we name, for convenience of reference, the Taylor site, and the old site first acquired we designate the Wilson site, or the one granted by gift of Wilson to the county in 1910. The Taylor site was secured under an agreement between the county commissioners and one B. W. Taylor, wherein he agreed that if the land in question would be designated by the board of county commissioners as the official county courthouse site, and the new courthouse authorized to be erected built thereon, he would procure the conveyance of title in fee to the county of this half block, and in addition thereto would indemnify the county against all cost arising from these condemnation proceedings in the acquiring of title by the county of such additional land adjoining the Taylor site as the county commissioners considered necessary for courthouse purposes, accompanying his offer with a certified check, accepted by the county commissioners, to be used in the payment of expenses and damages of this suit in the acquiring of title to the land sought to be condemned. In brief Taylor's offer is that he will deed a half block free and hold the county harmless in the procurement of title to this land sought to be condemned by paying the amount of the judgment awarded in condemnation proceedings as the value of the property and costs, the county thereby acquiring an area of about a block for court house purposes without cost to the county. This proposition met with favor by the board of county commissioners and on September 23, 1913, when

in regular session, they officially designated the entire block as a site for the new county courthouse, after which Taylor conveyed to the county the half block owned by him. And these proceedings are begun to condemn land adjoining the Taylor site which is owned by Mr. Wilson, the grantor to the county of what we may term the rival Wilson site. On September 23, 1913, the day the county commissioners selected the Taylor site and officially designated that to be the site upon which the new courthouse was to be erected, they also by resolution determined that one-half of a city block, the approximate area of the land deeded by Taylor, and the area of the Wilson site as well, was insufficient upon which to construct a courthouse and other necessary county buildings. Thus at the commencement of these proceedings we find the county the owner of two different tracts, each half a block in area and both donated by generous and public-spirited citizens for the same county purpose. While title to the Wilson site has been in the county for three years no resolution officially designating it as a courthouse site or for courthouse purposes has ever been passed by the county commissioners. Respondents, however, urge that the equivalent has been done in that the submission of the proposition of bonding for courthouse purposes did not, as might have been done under § 2565, Rev. Codes 1905, also contain the question of purchase of a site for the courthouse, and that therefore the county commissioners, in behalf of the county, by necessary inference held out to the electorate that the county had a sufficient site and that none need be purchased inasmuch as a purchase was not mentioned and hence none authorized. The jury has found that the tract condemned as a necessary addition to the Taylor site is of the value of $200. We may take judicial notice also of the fact that since the county division in 1908, wherein Mountrail county was created out of what had been a part of Ward county, up to the present time no courthouse has been built, the county having been occupying temporary quarters. The first county courthouse will be the one in course of building. The conclusion of the trial court from the foregoing facts found was that the county by "continued use of said tract (Wilson tract) for jail purposes, in law accepted and designated the same as a courthouse site; that the plaintiff cannot select another courthouse site or acquire title to the real estate described, (the Wilson land adjacent to the Taylor site) and which is sought to be condemned for a part of the court-

house site, until the board of county commissioners have been authorized by a majority vote of the electors of said county to and shall actually dispose of the site referred to in paragraph 5 of the findings herein known as the Wilson site; that this action be dismissed." The trial court's decision was based upon the theory that the exercise by the county board of the right of choice as to a courthouse site exhausted their power to further consider the matter or later select a different courthouse site, assuming that as a matter of law the first tract acquired, the Wilson site, had without affirmative action of the commissioners other than by accepting a deed to it with a jail structure thereon, amounted to a determination that it was the site upon which any future courthouse must be constructed, unless by a majority vote of the electors of the county the board was authorized to sell the Wilson site before acquiring a new one. That in any event but one site at a time could be legally acquired.

The county is a body corporate and as such may be the grantee of land to be held for public purposes, (§ 2377, Rev. Codes 1905,) and may purchase grounds for sites for county buildings. (Rev. Codes 1905, §§ 2563–2566.) Whether a purchase of one site may be made while the county has an adequate site for a county courthouse is not before us, for two reasons: (1) It has been adjudged by the county commissioners, the body to whom discretion to pass upon this matter has been entrusted, that a half block is insufficient upon which to erect this courthouse, thereby adjudging the Wilson site to be inadequate, assuming that it once had the status of a legally chosen and designated site for county buildings; and (2) the county is not purchasing and has not purchased a second site. It possesses two inadequate sites, both donated.

It has been found necessary to purchase an adequate site or to add to one or the other of these two by the acquirement of adjacent land to make whichever of the two is chosen adequate for the county purpose to which it is to be devoted. The issue is no different because it involves adding adjacent ground to the Taylor site than it would be had this action been to secure in the same manner an addition to the Wilson site, had that been chosen instead. In neither case has the county purchased a site while it had an adequate one. And this likewise disposes of the contention of respondent that inasmuch as the bonding proposition failed to include the purchase of a site the county should be

presumed to have one and on such presumption could not obtain another by purchase. Necessarily the only purpose of bonding is to procure money to erect a building, purchase a site or do both. Where there is no necessity to purchase it is sophistry to contend it to be necessary to bond to procure money that need not be thus expended. The law never requires an idle, useless act. Section 2565 has reference to the raising of money by bonding for certain purposes. It cannot be construed as a limitation upon the right of the county to take by grant real property donated for public purposes. Perhaps the board of county commissioners, prior to bonding, assumed the Wilson site to be adequate in area. Possibly again the board at that time may have intended to use that site as a nucleus from which to condemn adjoining land sufficient to constitute it an adequate site, and hence did not submit the question of purchase of a new site as a part of the bonding proposition. In any event the time for the determination by the board of the adequacy of the site had not then arrived. That time came when with the money in hand with which to build the question arose of where county buildings should be permanently located. Another site is then acquired by gift, and for the first time a choice was afforded between free sites owned by the county, as well as the question of what site should be chosen and designated as an adequate and suitable one.

The selection of one site is not final, and does not exhaust the power of the board vested with the right of choice to choose another before erection of building is begun. 11 Cyc. 380; Platter v. Elkhart County, 103 Ind. 360, 2 N. E. 544. "The power . . . over the location of public buildings is a continuing one." Graham v. Nix, 102 Ark. 277, 144 S. W. 214–218. And the power to acquire by eminent-domain proceedings an addition to an inadequate site already possessed is expressly authorized by § 2406, without the necessity of submitting such question to a vote of the people, even though it may result in what would otherwise be in law an extraordinary expenditure, and beyond the power of the board without authorization by the electorate. Possessing, then, title in fee to an inadequate site, all question of power or right of the commissioners to act as done in this case is settled by § 2406, Rev. Codes 1905.

Much discussion is contained in the briefs on the right of the commissioners to change the location of the courthouse site as from an

established site to another of their choosing. All this is without this case for the reasons: (1) That the Wilson site, although a jail site, has never been determined as an adequate, proper, and suitable site for any other county building. (2) It has been determined as inadequate as a proposed courthouse site. (3) It has never been an established courthouse site. No change from an established to a new site for such purposes is here involved. (4) Grant that the deed from Wilson was accepted with the understanding between Wilson and the county board that it was accepting a proposed site upon which at some time a courthouse would be built; and that the board contemplated and intended at that time to erect the courthouse upon that site, and with such understanding it was conveyed to and received by the county. Yet the present board, charged with the duty of the selection of an adequate site, and ready to build, cannot be precluded or estopped from selecting a site in its judgment better than the one first secured, the county possessing both sites from which to choose, and able to procure either one without cost. In such an event someone must make a selection, the determination of a legislative or political question, and the county commissioners are the body whose selection under the law is final, except where fraud, bribery, or the like may invalidate a choice made. Crow v. Warren County, 118 Ind. 51, 20 N. E. 642; Rotenberry v. Yalobusha County, 67 Miss. 470, 7 So. 211; State ex rel. Norman v. Smith, 46 Mo. 60–63; Graham v. Nix, 102 Ark. 277, 144 S. W. 214; 11 Cyc. 380. While in the answer fraud is alleged, none is shown, and the question is abandoned on argument. A private party can have no more than a citizen's interest in the question of where a public building is to be located. He cannot, even by contract, acquire any private interest in such public matter. Hence by his gift of a site for such public purposes no private interest could be acquired by Wilson in the future location of the county courthouse. He has no more right than any other citizen in the matter, and can acquire no right upon which to urge an estoppel against the county because of its acceptance of his commendable generosity. In fact, his contention as urged by his counsel is not made in the spirit of private interest, but instead as for the general welfare. This in itself in effect negatives an estoppel, for the public itself cannot estop the public. For authority under stronger facts than here, see Colburn v. El Paso County, 15 Colo. App. 90, 61 Pac. 241, wherein

a part of the stipulated consideration of the sale of a courthouse site was agreed to be benefits to the seller from the location of the courthouse thereon, and because of which it was in effect stipulated no removal should be had in the future. The site sold under such agreement became the established courthouse site, remaining such for twenty years, when a board of county commissioners subsequently changed from such established site to a new one as the site of a new courthouse to be erected. It was held that notwithstanding the stipulated consideration under which the site was originally deeded to the county, that the agreement did not operate as a bar to removal or change of location of the county buildings, such provision against removal being utterly void as beyond the power of the county officials to perpetually bind the county in such manner. "Any contract which will disable a public or quisa public corporation from performing the duty which it has undertaken, or has been imposed upon it for public weal, is void," citing many cases, among others Stone v. Mississippi, 101 U. S. 814, 25 L. ed. 1079. "But the power of governing is a trust committed to the people to the government, no part of which can be granted away. . . . These several agencies can govern according to their discretion, if within the scope of their general authority while in power; but they cannot give away nor sell the discretion of those that are to come after them, in respect to matters the government of which, from the very nature of things, must 'vary with varying circumstances.'" And again quoting from Colburn v. El Paso County: "In the early settlement of county seats a small area of ground and a small building only are usually necessary for a courthouse. In after years when the town may have increased in wealth and importance and population, public interest might imperatively demand that a different location be selected, that a much larger building be erected; and yet if the theory contended for in this case be correct the public would be powerless because, years before, some board of county commissioners had made for them a contract which absolutely precluded any chance for future relief. . . . If its legal effect was to compel the county to perpetually use the ground conveyed for a courthouse a most anomalous condition of affairs would arise. The contention of the plaintiff cannot be for a moment sustained. It is manifestly contrary to every principle of public policy." This is the opinion of the court of appeals of Colorado on facts very similar to

27 N. D.—19.

those before us.  See also Allen v. Lytle, 114 Ga. 275, 40 S. E. 238, and Kendall v. Frey, 74 Wis. 26, 17 Am. St. Rep. 118, 42 N. W. 466.

The trial court held in its conclusions of law, that the county commis-sioners were powerless to select or acquire title to the Taylor site until the Wilson site had been sold.  This was on the theory that the Wilson site had become an established courthouse site, which is contrary to fact and law.  Assuming the Wilson site to be the duly selected and estab-lished site for this courthouse, it is argued by respondents that "§ 2399 confers upon the board the authority to sell public grounds and to pur-chase other grounds in lieu thereof," but not until authority to sell has been submitted to vote and been authorized by a majority vote of the people of the county, as provided by § 2399.  Respondents contend that as no vote has been had on the sale of the Wilson site, it cannot be sold, and a site "in lieu" of it cannot be purchased until such sale had or authorized of the Wilson site.  Under such reasoning the commissioners would be obliged to either build upon the site by them adjudged inade-quate, the Wilson site, or else suspend and delay building until these questions can be submitted to the people, when, perchance, an adverse vote on the question of sale may defeat the very purpose for which bonds were voted, that is, the erection of this courthouse, or compel it to be placed upon a cite adjudged inadequate; in which event the judgment of the board authorized by law to pass conclusively upon the adequacy and propriety of the location is in turn nullified and denied.  The fundamental error is in assuming the commissioners are purchasing a site, conceding without adjudging respondents' contention to be other-wise correct.  The Taylor site is not one purchased or acquired in lieu of the Wilson site, assuming also the latter to be the legally designated courthouse "grounds," contrary to fact.  Section 2399 was not enacted with reference to the sale of any particular public grounds, but is a general limitation on the power of the commissioners to dispose of coun-ty grounds without sanction of the people first obtained.  It has no relation to the question before us.  This section may apply should the county commissioners determine that either of these tracts donated to the county should be sold.  As already emphasized, when considering the Wilson site we are speaking of public grounds, and not an established courthouse site.  There is no question before us of a change from one

courthouse site to another one.   This county is possessed of two plots of ground.   It never has had a courthouse nor a courthouse site.   Its properly constituted authority has designated both of these tracts inadequate as such sites, but has taken one of them as a nucleus to which to add, by eminent domain proceedings, sufficient territory to constitute the same what it has designated as a site and found to be adequate in area when such additions are acquired.   Then, for the first time, there will be in fact and law an established site adjudged to be adequate for courthouse purposes.

What we have said in passing upon the foregoing questions assumes, without deciding, that they are properly raised, and that respondents are in position to urge them.

Coming now to the issues usual to actions in eminent domain, we pass upon the contention of respondent, that "the record is silent as to the necessity of the taking of the land in question for such public use." "The necessity for the exercise of the power" is conclusively determined by the board, and is beyond judicial review.   Grafton v. St. Paul, M. & M. R. Co. 16 N. D. 313, 22 L.R.A.(N.S.) 1, 113 N. W. 598, 15 Ann. Cas. 10.   This is the equivalent of saying the finding of inadequacy of one-half block for courthouse site purposes, and necessity of half a block more to make an adequate site, is beyond question as a legislative, and not a judicial, matter.   This leaves the only question to be whether this particular ground, half block sought to be taken, is adjacent to the Taylor tract and necessary to be taken in extending the Taylor site to a block in area.   This is settled in the appellant's favor by the trial court's findings 9 to 15.

This passes upon all questions raised adversely to the respondents' contentions.   It is ordered that upon the findings of fact as found by the trial court under the pleadings that the judgment entered be vacated, and the usual judgment and decree in condemnation will be entered, vesting title in fee simple in plaintiff county to the land described in ¶¶ 2 and 7 of its complaint; and also adjudging it to be the owner in fee simple of the land described in ¶ 3 of plaintiff's complaint, upon payment into court for respondent Wilson by Mountrail county of $200, the value of the land taken, and interest thereon since January 7, 1914, together with respondent Wilson's costs of trial and on this appeal.   Defendant recovered a dismissal below, and appellant county cannot, in

eminent domain proceedings, recover costs on its successful appeal, the costs being merely a necessary incident to the ascertainment of the issue of damages under § 14 of the state Constitution. Martin v. Tyler, 4 N. D. 278, 25 L.R.A. 838, 60 N. W. 392; Dill. Mun. Corp. 5th ed. § 1039 note; Lewis, Em. Dom. §§ 812 et seq.; Re New York, W. S. & B. R. Co. 94 N. Y. 287–294. Defendant Wilson will recover costs and disbursements on trial and on appeal.

Decree ordered entered accordingly.