[File No. 5996.]

SHERIDAN COUNTY, a Public Corporation, Respondent, v. J. E. DAVIS et al.
DAVID H. AXT, Appellant.

(240 N. W. 867.)

Opinion filed February 3, 1932.

*Hyland & Foster,* for appellant.

*Peter A. Winter,* State's Attorney, for respondent.

BIRDZELL, J. This is a condemnation suit in which the County of Sheridan sought to have condemned a parcel of land belonging to the defendant and containing gravel which the plaintiff desired to use in the construction of highways. The defendant obtained a judgment for $138.50 damages and $19.70 costs, the total amount of which was duly deposited with the clerk of court, and a final order of condemnation condemning approximately three acres of the defendant's land was made. The defendant appeals from the judgment and from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

The complaint alleges that for the purpose of maintaining highways within the County of Sheridan it is necessary for the plaintiff to condemn certain parcels of land containing gravel needed for surfacing such highways; that there is gravel upon the property described in the complaint belonging to the defendant. The parcel so described is contained in the northeast quarter of the northeast quarter of section 22, township 147, range 77, Sheridan county, and beginning at the northwest corner of said description it lies in rectangular shape 250 feet to the east and 550 feet to the south. It is alleged that it is necessary to regravel the highway near this property and that it is necessary to obtain this property in order to so improve the highway. The answer, among other things, denies that condemnation of the property is necessary for the purpose mentioned in the complaint and alleges that the use to which the plaintiff desires to put the premises is not a public use for which condemnation is authorized.

The first contention to be noted on this appeal is that the complaint does not state a cause of action. This was raised by an objection to the introduction of any evidence at the opening of the trial. The eminent domain statute outlines the purposes or uses for which the right of eminent domain may be exercised and the estates or rights in

lands that are so subject to be taken. Section 8203, Supplement to the Compiled Laws of 1913 (Laws of 1915, chap. 153), among other purposes, authorizes the right to be exercised in behalf of roads, streets and alleys and all other public uses for the benefit of any county, incorporated city, village or town, or the inhabitants thereof, which may be authorized by the legislative assembly (see ¶ 3). Section 8204 of the Compiled Laws of 1913 classifies the estates and rights in lands which are subject to be taken for public use. The section reads:

"The following is a classification of the estates and rights in lands subject to be taken for public use:

"1. A fee simple, when taken for public buildings or grounds, or for permanent buildings, for reservoirs and dams and permanent flooding occasioned thereby, or for an outlet for a flow or a place for the deposit of debris or tailings of a mine.

"2. An easement, when taken for any other use.

"3. The right of entry upon and occupation of lands and the right to take therefrom such earth, gravel, stones, trees and timber as may be necessary for a public use."

It is apparent from these statutes that the complaint does not state a cause of action either for the condemnation of a fee simple estate or for an easement, because there are no facts alleged in the complaint showing that there is any necessity for taking the property for any purpose for which a fee simple estate may be taken, nor for which an easement is requisite, as for a highway or thoroughfare. The complaint does not show that the land is required for any public use. On the other hand, it does show that it is useful for the purpose for which the necessity exists only to the extent that it will furnish gravel to be moved on to the established highways to improve them. The inference is that the land will be of no use or benefit to the public or to the county after the gravel is removed from it. The only cause of action, therefore, which the complaint states is a cause to condemn a right of entry upon and the occupation of the lands, together with "the right to take therefrom such earth, gravel, stones, . . . as may be necessary for a public use."

The respondent, however, contends that the only way the county could proceed to acquire the gravel in question was to condemn the land where it is deposited and cites Chicago, M. & St. P. R. Co. v.

Mason, 23 S. D. 564, 122 N. W. 601, where such proceeding was supported; also, Northern P. R. Co. v. Boynton, 17 N. D. 203, 115 N. W. 679, where land was condemned for reservoir purposes and where this court, in the course of the opinion, said (page 209 of the state report): "No one would question the right of a railway company to condemn land for gravel for the ballasting of its roadbed." What was said, both in this case and in the South Dakota case, was said in view of the statute enumerating the powers of railroad corporations as the same are contained in § 4613, Compiled Laws of North Dakota for 1913, ¶¶ 3 and 4. (The South Dakota statute cited in the Mason Case, 23 S. D. 564, 122 N. W. 601, supra, is identical with ours in this respect.) This statute expressly recognizes the right of a railroad company for the purpose "of obtaining gravel and other material *to take as much land* as may be necessary for the proper construction, operation and security of the road." (Emphasis supplied.) In the absence of such an express statute giving to the county commissioners the right to take land for the purpose of obtaining gravel for a highway, the right of eminent domain when exercised for this purpose can extend no further than to permit the taking of a right of entry and occupation for the purpose of removing the gravel therefrom. (§ 8204, ¶ 3, above quoted.) The right must rest upon statute and can be exercised no further than the statute permits.

Lewis, on Eminent Domain, 3d ed. § 388, says that "All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other." See also 2 Lewis, Em. Dom. 3d ed. § 461. In § 395 the same author refers to the common practice of providing by statute that the proper officers may enter upon private property and take timber and materials for the repair of roads and bridges, the compensation to be afterwards adjusted where the constitution does not require prepayment for property taken. The last case in which Chancellor Kent wrote an opinion happens to be one in which he considered the authority of canal commissioners in New York to enter upon land and take rock for the purpose of constructing a dam and other works connected with the construction of a canal. The authority was one to enter upon lands contiguous to the canals and the learned chancellor

commented upon the power as follows (Jerome v. Ross, 7 Johns. Ch. 315, 344, 11 Am. Dec. 484, 495):

"The general power is to enter upon and use all lands necessary for the prosecution of improvements, and to make canals, feeders, locks, dams, etc., doing, nevertheless, no unnecessary damage; and then comes the provision that any lands taken and appropriated for any of the purposes aforesaid shall be paid for and vest in the state. There was no need that the fee of lands used only for a temporary purpose should be vested in the public. If the owner is paid for the damage occasioned by the temporary use of his lands, it is all that he can justly require, and this compensation the state is bound to give him."

Another provision of the statute providing expressly for the taking and appropriation of lands, waters, and streams and for compensation to be made and the vesting of a fee simple in the premises so appropriated in the state was held to be applicable only to lands taken and appropriated, meaning "lands permanently applied, so as to be entirely lost to the owner, and not lands affording a temporary use for passage and deposit, or for procuring materials for the locks, dams," etc. See also Branson v. Gee, 25 Or. 462, 24 L.R.A. 355, 36 Pac. 527; Cherry v. Matthews, 25 Or. 484, 36 Pac. 529; Cherry v. Lane County, 25 Or. 487, 36 Pac. 531, cases arising under an Oregon statute permitting road supervisors to take materials for a road from lands in their district, the public being obligated to pay the damages.

If any doubt existed as to the proper construction of our statute—that is, as to whether it authorized the taking of a fee where the public use is fully subserved by taking materials from the premises—it should be resolved against the authority to take the fee. As was said by this court, speaking through Corliss, J., in Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570, where a riparian right was condemned by a railroad company (page 162 of the state report), "It was not necessary to condemn the land through which flows the portion of the river to be diverted from its channel. There appears to be no necessity for the taking of the real estate itself; and it is a familiar principle of law that the wresting of private property from the hands of its owner for a public use should never be permitted to extend beyond such property or such interest in property as is reasonably required to subserve

the public interests. It would be unnecessarily burdensome to the company, and inexcusably oppressive against these defendants, to compel or even allow the company to take the fee of the lands involved, when the public use requires merely that they should be damaged, and not that they should be taken wholly from their owners. That the company could, under our statute, condemn the riparian rights without also taking the fee of these lands, does not admit of doubt. Sec St. Helena Water Co. v. Forbes, 62 Cal. 182, 45 Am. Rep. 659."

In People ex rel. Heyneman v. Blake, 19 Cal. 579, at page 597, the rule applicable is stated as follows:

"That act (the Railroad Act of 1853) contemplates that the commissioners shall ascertain the compensation to be made 'for the taking or injuriously affecting' the lands. But independent of this, the right to condemn the lands includes the right to condemn any estate or interest therein which may be necessary for the purposes of the company. And even where the lands are in terms taken, it may be questioned whether the title passes absolutely to the corporation. The prevailing doctrine in such cases is, that the title vests only to the extent necessary for the purposes of the incorporation. 'The general course of decisions in this country,' says Redfield, 'coincides with the English common law rule, in regard to the title acquired by the public, by the exercise of the right of eminent domain; that is, that no more of the title is divested from the former owner, than what is necessary for the public use. The owner may still maintain trespass for any injury to the freehold by a stranger.' "

The power of eminent domain is not so circumscribed that its exercise for a limited public purpose must include a taking of the fee of that portion of real property affected by the use. The power itself extends to private property of every kind, to land, timber, stone, gravel, water and water rights. In short, there is no species of property, nor any kind of property rights, which may not be seized under the right of eminent domain. See 1 Elliott, Roads & Streets, 4th ed. § 239. Our statute seems to have been drawn in recognition of this principle, for it authorizes the taking of the fee where a permanent use is to be subserved, an easement where that will suffice, and a right of entry and occupation where only materials are to be taken.

From this it follows that the damages recoverable consist of the value of the right condemned and of the incidental damages to the freehold and to the land not directly affected by the right condemned.

The case was tried, over the objection of the defendant, on the theory that the damages were to be assessed according to the value of the land taken, rather than according to the value of the right of entry and occupation for the purpose of removing the gravel. It is true that some evidence was permitted to be introduced tending to show the number of yards of gravel in the parcel in question and the value per yard. On the other hand, there was considerable evidence on behalf of the plaintiff of the value of the land per acre, but both the rulings of the court and the instructions to the jury were such as to readily convey the impression that the value per acre with damages to the part not taken was the true criterion. For instance, after directing the jury to determine the damages accruing to the portion of the land not sought to be taken and to consider the benefits, if any, to such land, they were directed to add such damages, if any, to "the reasonable market value of the portion and parcel of land actually taken and occupied and appropriated for the purpose of the gravel pit in question." They were directed to "consider the difference between the market value of the entire tract before the taking and appropriation, and the market value of what is left after the taking . . . that the market value is not to be determined by the value of the strip in question, to the county by reason alone of its necessity of acquiring it; nor of its peculiar value to the defendants, the owners. These considerations must in no way be allowed to affect the determination by the jury of the value of the whole property or the strip of land sought to be appropriated by the plaintiff county, in this proceeding." In view of the character of the only right which the county is permitted to condemn, we are of the opinion that the evidence should have had a more direct bearing upon the quantity and the value of the gravel in its natural bed and that the court should have instructed more with reference to that value than to the market value of the land itself.

There is some contention here that the necessity for the taking does not sufficiently appear, but we think there can be little merit in this contention in view of the showing made that it was proposed to gravel

roads in the immediate vicinity and that the gravel pit nearest the one in question was some twelve miles distant. See Northern P. R. Co. v. Boynton, 17 N. D. 203, 115 N. W. 679, supra.

Counsel for the defendant moved for a change of the place of trial on account of the difficulty anticipated in securing a fair trial to a jury of taxpayers in Sheridan county. The motion was denied. In the examination of the jurors counsel elicited from each one the fact that he was a taxpayer and claimed implied bias on this account. The court, however, did not allow the challenge, so, after exhausting his peremptory challenges he was nevertheless compelled to try the case to a jury of taxpayers. The rulings of the court on the motion for a change of place of trial and denying the challenge are assigned as error. We are of the opinion it cannot be said as a general proposition that the interests of a juror as a taxpayer in the outcome of a suit against a public corporation disqualifies him from acting. Our statute, § 7616, Compiled Laws of 1913, ¶ 5, is to the effect that interest on the part of a juror in the event of the action or in the main question involved in the action, except his interest as a member or citizen of a municipal corporation is a ground of challenge for cause. The exception here is at least an implied recognition that where the interest in the outcome of a suit extends no further than to affect him as an ordinary taxpayer he is not subject to challenge for cause. To this extent the statute would seem to express a rule that is contrary to what is said to be the weight of authority. See 35 C. J. 315, holding that a person who is a resident and a taxpayer of a municipal corporation is not a competent juror in an action against a municipality. Clearly, in our opinion, a county is a municipal corporation within this statute.

However, though no juror might have been subject to challenge for cause, it does not follow that the court wisely exercised its discretion in denying the application for a change of place of trial. It is one thing to hold that a juror may not be challenged for cause on account of a very small interest which he may have as a taxpayer, but quite another thing to conclude that an entire jury of taxpayers, each of whom is interested to a small degree adversely to the defendant, gives that assurance of a fair trial to which every litigant is entitled.

Being of the opinion that the defendant did not have a fair trial, for the reasons stated, the judgment is reversed and the cause remanded for a new trial.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and BURKE, JJ., concur.