70 N.W.2d 899 (1955)
The BOARD OF EDUCATION OF CITY OF MINOT of the State of North Dakota, Plaintiff and Respondent,
v.
PARK DISTRICT OF CITY OF MINOT, Clara Kluver, Effie Conan, Harvey Johnson, Rollie Johnson, George Johnson, Lyle Johnson, Florence E. McPeek, Frank W. Roach, Annie Roach, Lucille Margaret Roach, Gladys Roach Cleary, Clarence P. Roach, Joseph H. Roach, Eleanor Roach Moen, Bertha Rogers, Henry Storbeck, Alma Storbeck, Minot Federal Savings & Loan Association, Clifford Odland and Josie D. Odland, Kate Faris, William D. Stevens, Marshall E. McGovern, Roy Reimer and Gladys F. Reimer, Thomas J. Timko and Florence J. Timko, George S. Klovstad and Celia Klovstad, Clair L. Ingalls and Dorothy M. Ingalis, Lillian Dasher, A. C. Russell and Ellen Russell, Elliott Film Corporation, Katherine W. Lefebvre and William V. Lefebvre, John B. Simonieg, and Rose Simonieg, Stella M. Aaby and Alvin G. Aaby, Anna Knudtson, also known as Annie Knudtson, Theodore O. Lee, Alice M. Elder and James R. Elder, Gustav Rothgarn and Tillie Rothgarn, Alan Lee, Robert Sullivan and Violet Sullivan, Hugo F. Fursteneau and Stella M. Fursteneau, also known as Hugo F. Furstenau and Stella M. Furstenau, Gordon F. Kuist and Eunice C. Kuist, Sam Mentis, Mary Margaret Davis, John C. Burkhartsmeier and LaVaughn M. Burkhartsmeier, Harvey J. Johnson and Elisa A. Johnson, Frank Pettys and Nora Pettys, Newell A. Sherwood and Jeanette Sherwood, Laura M. Ralston and Leslie Ralston, Bernhart M. Mueller, John N. Ellison and Sophie G. Ellison, Fred R. Erenfeld and Eliska Erenfeld, Jennie Thompson, Hannah Effertz, Mary H. McKoane, Peter Olson and Emma Olson, Henry K. Milkey and Hazel Milkey, Edith Johanna Peterson, Union National Bank, Minot, Ruth Barnes, E. V. Rosenberger and Neva Rosenberger, Provident Life Insurance Company, Arthur F. Anderson and Beda S. Anderson, Kenneth A. Schultz and Yvonne L. Schultz, Charles L. Northrop and Minnie Northrop, L. G. Kruse and Orpha Kruse, Leo J. Flammang and Hazel M. Flammang, Samuel J. Stubbs, Otto Engen, Earl A. Jordahl and Gladys M. Jordahl, First National Bank, Minot, Bertha Hill, John A. Moldstad, A. L. Landis, Ingel C. Smette, Juliana Schmalz, and all other persons unknown claiming any estate or interest in or lien or encumbrance on the property described in the complaint, Defendants and Appellants.
No. 7515.
Supreme Court of North Dakota.
June 6, 1955.
Rehearing Denied June 30, 1955.
*900 McGee & Van Sickle, Minot, for plaintiff and respondent.
*901 Bosard & McCutcheon, Minot, for defendants and appellants.
MORRIS, Judge.
This is a civil action brought by the Board of Education of the City of Minot, organized as a body corporate pursuant to the provisions of Section 15-27, NDRC 1943, against the Park District of the City of Minot, certain named individual defendants, and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the complaint, which is Lot 4, Block 8 of the Original Plat of North Minot designated as Lincoln Park and dedicated to the public use of the inhabitants of the City of Minot. The park consists of 12.91 acres. The plaintiff seeks to obtain fee simple title to this land for public school purposes through the exercise of its power of eminent domain under the provisions of Chapter 32-15, NDRC 1943. The park district owns the property subject to the reversionary interests of certain individuals who are named as parties defendant.
The defendant park district demurred to the complaint on two groundsfirst, that the plaintiff has not legal capacity to bring the action; and second, that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled. The park district answered by a general denial and an admission of certain more formal parts of the complaint. It also made specific allegations questioning the power of the plaintiff to exercise the right of eminent domain and denied that the public use to which the plaintiff sought to apply the property was more necessary than the public use to which the property was being put by the park board. It also alleged that the property was of the value of $100,000. A number of individual defendants also answered challenging the power of the plaintiff to take the property by eminent domain and further alleging that if the property is to be condemned and taken for school purposes certain property owned by various individual answering defendants would be damaged and depreciated in the sum of $500 per lot. Trial was had to the court without a jury upon all issues except that of damages. The court made findings of fact from which he drew the following conclusions of law:
"1. That the plaintiff, the Board of Education of the City of Minot is empowered and entitled to the exercise of the right of eminent domain to acquire Lot 4, Block 8; North Minot from the Park District of the City of Minot for use as a site for school facilities.
"2. That the use of Lot 4, Block 8; North Minot, by the Board of Education of the City of Minot, for the construction of a junior high school is a use authorized by law.
"3. That the taking of Lot 4, Block 8; North Minot and of the whole thereof is necessary to its use as a site for a new junior high school.
"4. That the public use of Lot 4, Block 8; North Minot and the whole thereof as a site for the construction of a junior high school is a more necessary public use than its use by the Park District of the City of Minot as a public park.
"5. That the defendants herein are entitled to a determination by a jury of the question of damages herein.
"6. That upon determination of the question of damages, a judgment of appropriation and condemnation in form provided by law should be made and entered herein."
The defendants demanded a trial by jury on the issue of damages. A jury was drawn pursuant to order of the court and after a trial on the issue of damages the jury assessed compensation and damages payable to the park district as compensation for land taken in the sum of $25,820. It found no damages for property not taken but claimed to have been injuriously affected. Judgment was entered pursuant to *902 the conclusions of law of the court and the verdict of the jury condemning the land for the use of the plaintiff and awarding the park district $25,820 as compensation for its taking, together with costs and disbursements. The defendants appealed and demanded a trial de novo and also served and filed specifications of error including the assignment that the court erred in overruling the defendants' demurrer.
Counsel for the defendants and appellants earnestly and ably argues that Chapter 32-15, NDRC 1943, is primarily procedural and that, though it sets forth the purposes for which eminent domain may be exercised, it is not a grant of power and that the power to exercise the right of eminent domain must be found in other statutes directly granting it. It is then asserted that the legislature has never granted to special school districts the power to exercise the right of eminent domain. These contentions require a meticulous study of statutes pertaining to eminent domain and the acquisition of real property by school districts.
Statutes conferring the power of eminent domain will be strictly construed. Sheridan County v. Davis, 61 N.D. 744, 240 N.W. 867. But if a statute confers such power it will be liberally and reasonably construed so as to make the purpose effective. Petersburg School District v. Peterson, 14 N.D. 344, 103 N.W. 756. The power of eminent domain may be conferred by the legislature either expressly or by necessary statutory implication. San Joaquin & Kings River Canal & Irrigation Co. v. Stevinson, 164 Cal. 221, 128 P. 924; People v. Superior Court, 10 Cal.2d 288, 73 P.2d 1221; Chicago, Burlington & Quincy Railroad Co. v. Cavanagh, 278 Ill. 609, 116 N.E. 128; School District of Columbia v. Jones, 229 Mo. 510, 129 S.W. 705; McQuillin, Municipal Corporations, 3d Ed., Section 32.12; 29 C.J.S., Eminent Domain, § 22; Nichols on Eminent Domain, 3d Ed., Section 3.222(3).
A special school district "shall possess all the powers and shall perform all the duties usual to corporations for public purposes or conferred upon it by law. Under that name, it may sue and be sued, enter into contracts, and convey such real and personal property as shall come into its possession by will or otherwise." Section 15-2702, NDRC 1943. Among the powers conferred upon the board of education of a special school district we find the following set forth in Section 15-2908, NDRC 1943:
"2. To establish and maintain such schools in its district as it shall deem requisite or expedient, and to change or discontinue the same; * * *
"4. To purchase, sell, exchange, and hire schoolhouses and rooms, lots, or sites for schoolhouses, and to fence and otherwise improve them as it deems proper; * * *."
Turning now to the statutes on eminent domain, we find that Section 32-1502, NDRC 1943, provides that:
"Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses: * * *
"3. Public buildings and grounds for the use of any county, city, park district, village, or school district; canals, aqueducts, flumes, ditches, or pipes for conducting water for the use of the inhabitants of any county, city, or village, or for draining any county, city, or village; raising the banks of streams, removing obstructions therefrom and widening, deepening, or straightening their channels; roads, streets, and alleys, and all other uses for the benefit of any county, city, park district, or village, or the inhabitants thereof, which may be authorized by the legislative assembly, but the mode of apportioning and collecting the costs of such improvement shall be such as may be provided in the statutes by which the same may be authorized; * * *."
Section 32-1503 sets forth the estates and rights in land subject to be taken for public use as follows:

*903 "1. A fee simple, when taken for public buildings or grounds, or for permanent buildings, for reservoirs and dams and permanent flooding occasioned thereby, or for an outlet for a flow or a place for the deposit of debris or tailings of a mine;
"2. An easement, when taken for any other use;
"3. The right of entry upon and occupation of lands and the right to take therefrom such earth, gravel, stones, trees, and timber as may be necessary for a public use."
Section 32-1505 provides that before property can be taken it must appear:
"1. That the use to which it is to be applied is a use authorized by law;
"2. That the taking is necessary to such use; and
"3. If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."
In support of the argument that Section 32-1502, NDRC 1943, does not confer the power of eminent domain but merely states the public uses in behalf of which that power may be exercised and that the power has not been conferred upon special school districts, the defendants point out that Section 15-2609, NDRC 1943, specifically confers the power of eminent domain on common school districts. The defendants also cite Sheridan County v. Davis, 61 N. D. 744, 240 N.W. 867, 869. That case does not support the defendants' contention. But on the other hand it shows why the legislature may have deemed it necessary to specifically confer the power of eminent domain upon common school districts while it was not necessary to do so with respect to special school districts because of a difference in the estates authorized to be taken. In that case the court held that county commissioners did not have the power to take by eminent domain the fee simple title to land for the purpose of removing gravel therefrom. The decision was based upon paragraph 3 of Section 8204, Compiled Laws of 1913, which is now Section 32-1503, NDRC 1943, quoted above. This paragraph provides for the right of entry upon lands to take gravel therefrom as may be necessary for public use. It appeared that the only use sought by the county commissioners was to take gravel and therefore "In the absence of such an express statute giving to the county commissioners the right to take land for the purpose of obtaining gravel for a highway, the right of eminent domain, when exercised for this purpose, can extend no further than to permit the taking of a right of entry and occupation for the purpose of removing the gravel therefrom" and thus the court denied the right of the county commissioners to take fee simple title by eminent domain in that case. The reasoning of the opinion leads to the conclusion that the court would have sustained the right of the county to take the gravel had that been asked for but the county asked for a fee simple estate when it needed only the right to take and remove gravel. The court says:
"The eminent domain statute outlines the purposes or uses for which the right of eminent domain may be exercised and the estates or rights in lands that are so subject to be taken. Section 8203, Supplement to the Compiled Laws of 1913 (chapter 153, Laws of 1915), among other purposes, authorizes the right to be exercised in behalf of roads, streets and alleys and all other public uses for the benefit of any county, incorporated city, village, or town, or the inhabitants thereof, which may be authorized by the Legislative Assembly (see paragraph 3)."
We think the reasoning in that case is sound and that where an estate or right in land, other than those provided for in Section 32-1503, NDRC 1943, is sought to be taken by eminent domain specific statutory authority therefor must appear.
If we turn to Section 15-2609, NDRC 1943, providing for the acquisition of *904 schoolhouse sites by common school districts, we find:
"If the owner of the real property refuses or neglects to convey the site, a site for a schoolhouse may be obtained by proceedings in eminent domain. If a school site so taken or otherwise acquired is not used for school purposes for three successive years, and if no schoolhouse or other building is located thereon, the site shall revert to the original owner or his assigns upon payment to the district of the sum originally paid by the district or such lesser sum as the board may fix. If the owner or his assigns shall neglect or refuse to make the payment within one year after demand therefor by the board, the site may be sold by the board."
Thus a common school district does not acquire an absolute fee simple title to a schoolhouse site. It is subject to reversion to the original owner under the conditions set forth in the statute. Such an estate is not provided for by Section 32-1503, NDRC 1943, and the legislature no doubt felt it necessary to specifically provide that the limited estate to be acquired by a common school district be obtained by eminent domain.
The statute pertaining to the acquisition of schoolhouse sites by a special school district, Section 15-2908, NDRC 1943, contains no provision for reversion. The special district acquires a fee simple title to its schoolhouse sites which is an estate authorized to be taken under Section 32-1503, NDRC 1943. This section must be construed in connection with paragraph 3 of Section 32-1502 heretofore quoted. When these sections are considered together they authorize a school district when it has not been otherwise provided by statuteas has been done with respect to common school districtsto acquire a fee simple title to a site and grounds for a schoolhouse by eminent domain. It should be noted that paragraph 3 does more than merely enumerate purposes, as do some of the other paragraphs of the same section. It sets forth not only the purpose or use for which the property may be taken but it enumerates the public corporations or subdivisions for whose use the property may be acquired.
The defendants have carefully briefed the statutes pertaining to the growth of the power of eminent domain in this state and have pointed out a number of specific instances where the legislature has conferred the power of eminent domain either for public purposes or in behalf of public corporations or organizations. Some of these organizations are of recent creation. Some of the purposes have arisen from new needs resulting from the development of our state and its subdivisions. That these would from time to time arise and would require the enactment of further laws was contemplated by the legislative assembly of 1895 in which our law of eminent domain originated. Chapter 35, § 5955 et seq., Revised Codes of North Dakota 1895. Paragraph 3, above discussed, still remains in substantially its original form. It not only provides for certain specific uses but also provides for "all other uses for the benefit of any county, city, park district, or village, or the inhabitants thereof, which may be authorized by the legislative assembly, * * *." As other uses arose other legislation was enacted extending the power of eminent domain. We are unimpressed with the argument that subsequent legislation indicates that paragraph 3 of Section 32-1502 when considered with Section 32-1503, NDRC 1943, confers no power of eminent domain on the public corporations, municipalities and subdivisions therein enumerated and that we must look elsewhere for statutes authorizing the exercise of the power when they seek to acquire property for the uses enumerated in paragraph 3.
In Ashby v. City of Juneau, 9 Cir., 174 F. 737, 738, the court considered a paragraph of the eminent domain statute of Alaska containing substantially the same wording as our paragraph 3 of Section 32-1502, NDRC 1943, and held that the words "roads, streets, and alleys", Carter's Ann.Civ.Code, c. 22, § 204(3), were used *905 independently as being within the public uses specified which were made the subjects of condemnation by municipalities without further legislation of congress. The court went on to say:
"We are also of the opinion that the right of the municipality to proceed in eminent domain is conferred, when we consider the statute just quoted in connection with the express grant of power to municipalities to provide for the location, construction, and maintenance of the necessary streets, alleys, crossings, sidewalks, sewers, and wharves, given in section 4 of the act of Congress amending and codifying the laws relating to municipal corporations in Alaska."
The importance of this last quotation as authority in the case before us becomes apparent when we consider that Section 15-2908, NDRC 1943, vests in the board of education of special school districts power to establish and maintain such schools in its district as it shall deem requisite or expedient and gives to the board the authority to purchase lots or sites for schoolhouses.
Mountrail County v. Wilson, 27 N.D. 277, 146 N.W. 531, 532, involved the power of the county to acquire by eminent domain a tract of land adjacent to an inadequate courthouse site which had already been obtained. Section 2406, Revised Codes of North Dakota 1905, vested the board of county commissioners with the power and authority "to purchase such land so adjoining said court house, without submitting such question to a vote of the people, * * *." The court held that this section "empowers the county to acquire, by condemnation proceedings, additional ground adjacent to an inadequate site to constitute an adequate and suitable site for county buildings, and this without authorization by a vote of the electorate of the county."
In Board of Education of City of Holland v. Van Der Veen, 169 Mich. 470, 135 N.W. 241, it was held that a statute making the city a single school district and conferring upon it the usual powers of corporations for public purposes and authorizing its board of education to designate and establish sites for schoolhouses and "to purchase and procure the lands therefor", Loc.Acts 1893, No. 271, art. 30, § 12, expressly conferred upon the board the power to condemn land for a school site.
See also People v. Superior Court, 10 Cal.2d 288, 73 P.2d 1221, and United States v. 2.74 Acres of Land in Williamson County, D.C., 32 F.Supp. 55. The foregoing statutes and decisions lead to the conclusion that a special school district has express statutory authority to acquire a school site and grounds by eminent domain.
The defendant and appellant park district next challenges the judgment on the ground that the plaintiff has failed to show that a greater necessity exists for the use of the land in question for school purposes than exists for the use of the land for park purposes. Paragraph 3 of Section 32-1505, NDRC 1943, provides that "If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use." must appear before the property can be taken by eminent domain. The question of greater necessity was properly tried to the court.
"If there is no express legislative provision, the relative importance of the two uses is to be determined by the court. If the later use is deemed by the court, under all the circumstances, to be more important than the earlier, the land is taken for the later use * * *." In re Certain Land in Lawrence, D.C., 119 F. 453, 456.
The trial court wrote a memorandum opinion analyzing the evidence. He also made comprehensive findings of fact in which he found that the proposed site is to be used for a junior high school; that it is centrally located with respect to patrons *906 residing both east and west of the site; that public utilities required for development are available; that the contour and terrain of the site are suitable for the erection of the proposed building; that the site is relatively free from hazards of main thoroughfare traffic and offensive industrial conditions; that the present junior high school facilities are crowded; and that additional facilities are necessary.
The court further found as to the present use that the proposed site is not well developed for park purposes and shows substantially no permanent improvements of substantial value and that the use of the land for school purposes is a more necessary public use than its use by the Minot park district as a park. The weight of the evidence supports the findings of the trial court in this respect. The park board argues that emphasis has been placed upon centralization of population and the distance of patrons from the school and that these are matters of convenience rather than necessity and that the case of the school district is based upon convenience which will not justify the taking in this instance. This case presents a clash of public uses, one as a school and grounds, the other as a park. Either use is to a large extent based upon public convenience, not the convenience of the school district or the park district as legal entities. The record clearly demonstrates that the convenience to the public arising out of the use of this land as a school site and grounds exceeds the convenience to the public arising from the use as a park. The convenience to the public becomes a necessity for the board of education in establishing a junior high school and that use is more necessary than the use of the land as a park. This is the conclusion reached by the trial court and with that conclusion we agree.
The next contention advanced by the park district is that the board of education grossly abused its discretion in proceeding to condemn Lincoln Park for school purposes. It is urged that the area of the tract sought to be taken is in excess of that necessary for school use and it is further contended that a large portion of the tract will be put to the same use by the school district that it is now being used for by the park board. The evidence is conflicting as to the acreage necessary for adequate school grounds. The park board contends that the maximum is five acres, while the board of education insists that the minimum is ten acres. The legislature has fixed the maximum amount for common schools at five acres. Section 15-2609, NDRC 1943. It has fixed no maximum amount that may be taken for a schoolhouse site by a special school district. Where the legislature has not fixed the extent of the area to be taken, it is left to the discretion of the school board and this discretion is not reviewable in the courts except where there has been gross abuse or manifest fraud. 18 Am.Jur., Eminent Domain, Section 109. We cannot agree with the park board that the use of an area by a school district as a school ground and athletic field is the same use as that of a public park. One is primarily for the use of the children attending the school, while the other is for the general use of the public. The time has long since passed when a school was a place devoted exclusively to mental training. The physical development of a child is as essential to his well-being as is his mental development. Many proper extracurricular activities of a school take place outside of the classrooms. The physical development of a child requires a suitable place for recreation and exercise. We see no abuse of discretion on the part of the board of education in acquiring 12.91 acres of land for a site and grounds for a junior high school.
The plaintiff offered in evidence a certified copy of the minutes of the meeting of the Minot board of education dated May 16, 1952, showing the passage of a resolution declaring the public necessity for the construction of additional school facilities and also setting *907 forth the reasons why it was necessary for the board of education to acquire the property now in question for the construction of such facilities and directing the president of the board to proceed to employ the assistance advisable to acquire the property. Four of the five members of the board were present and adopted the resolution unanimously. Plaintiff also offered in evidence a certified copy of another resolution similar to the first directing the president of the board of education to proceed according to law to employ the assistance advisable to condemn and acquire the property. The meeting at which this resolution was adopted was held March 11, 1954, and was attended by all five members of the board who voted unanimously for the adoption of the resolution. At this meeting only two of the old members remained on the board, three new members having succeeded to board membership.
The certified copies of the minutes of both meetings were objected to on the ground that they are self-serving documents containing conclusions and opinion evidence and are incompetent, irrelevant, and immaterial and introduce statements of evidentiary matters which are not the best evidence. The defendants and appellants now specify the admission of the exhibits as error. The basis of the condemnation proceedings was the action taken by the board of education. The record made by the board of their determination of necessity and the reasons upon which the action was based was admissible. The objections made were general. No specific parts of or statements contained in the exhibits were pointed out as being subject to objection. The trial was had before the court without a jury. Under all the circumstances the admission of the certified copies of the minutes was proper. No question was raised as to the sufficiency of the amount of the award made by the jury. The judgment appealed from is affirmed.
BURKE, C. J., and SATHRE, JOHNSON, and GRIMSON, JJ., concur.